2002-NMCA-104

55 P.3d 437

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Esther M. VILLAS, Defendant–Appellant.**

**No. 22,483.**

Court of Appeals of New Mexico.

Aug. 19, 2002.

Certiorari Denied, No. 27,685,
Oct. 7, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John W. Higgins, Higgins and Mescall, Albuquerque, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant was stopped at a police roadblock and was found to have a breath alcohol content (BAC) of .12. She appeals her conviction for driving while intoxicated (DWI), arguing that police misconduct in failing to charge another intoxicated driver rendered the roadblock unconstitutional. In the alternative, she argues that the police decision to prosecute her but not the other driver violates her right to equal protection under the law. We affirm her convictions.

## FACTS

{2} The Albuquerque Police Department (APD) set up a sobriety checkpoint at the intersection of Paseo del Norte and Coors Boulevard on the night of August 5, 2000. Sergeant Murray Conrad proposed the roadblock to his supervisors, who approved the plan. The roadblock plan included procedures that the officers at the roadblock were to follow. The officers were to stop every vehicle and ask a set of scripted questions. If an officer suspected that a driver had been drinking, the driver was referred to the secondary inspection area for sobriety testing. A person who showed signs of intoxication

was directed to the "BATmobile" for a breathalyzer test.

{3} When Defendant stopped at the roadblock, she was subjected to sobriety testing, then a breathalyzer test. Her BAC was recorded at .12, .04 above the legal limit of .08. *See* NMSA 1978, § 66–8–110(C) (1993). She was charged with DWI, booked, and prosecuted.

{4} One of the other drivers stopped at the same roadblock turned out to be the brother of an APD officer (hereinafter "Brother"). Brother was given a breathalyzer test and found to have a BAC of .09. Rather than charging Brother with DWI, however, Sergeant Conrad told another officer to give Brother a ride home. Sergeant Conrad acknowledged that in doing so he violated police procedures. He was later reprimanded by APD and temporarily suspended from working with the DWI squad.

{5} Defendant was tried in Metropolitan Court. She moved to suppress all evidence against her and dismiss the charges, arguing that the favorable treatment of Brother rendered the roadblock unconstitutional. The trial court denied her motion, and she was convicted of DWI. Defendant appealed to the district court, which affirmed her conviction. She now appeals to this Court.

## DISCUSSION

### The Failure to Charge One Intoxicated Individual Did Not Render the Roadblock Unconstitutional

■ {6} "[S]topping motorists for the purpose of detecting and apprehending drunk drivers constitutes a 'seizure' under the fourth amendment." *City of Las Cruces v. Betancourt,* 105 N.M. 655, 657, 735 P.2d 1161, 1163 (Ct.App.1987). Nonetheless, the police may stop drivers at sobriety checkpoints as long as the checkpoints comply with certain guidelines, established to ensure that the roadblocks are reasonable and to prevent the arbitrary treatment of motorists. *Id.* In New Mexico, the *Betancourt* standards govern the analysis of roadblocks. *See State v. Madalena,* 121 N.M. 63, 69, 908 P.2d 756, 762 (Ct.App.1995).

■ {7} In *Betancourt,* this Court held that the police must implement uniform pro-

cedures at roadblocks as a means to restrict the discretion of field officers. *Id.* at 658–59, 735 P.2d at 1164–65. We later described this requirement as dispositive. *State v. Bates,* 120 N.M. 457, 463, 902 P.2d 1060, 1066 (Ct. App.1995). In other words, if the police fail to establish uniform procedures for dealing with motorists who come through a roadblock, the roadblock will not pass constitutional muster and the stops will be invalid. *See id.* at 462–63, 902 P.2d at 1065–66.

{8} Defendant argues that her arrest was unconstitutional because the police failed to follow uniform procedures at the roadblock in question when they released one intoxicated driver while charging others with DWI. We agree with the State, however, that the *Betancourt* analysis determines the constitutionality of a roadblock stop, and not later police actions. The argument in *Betancourt* focused on whether the drivers' constitutional rights were infringed when they were stopped at the roadblock in question. *Id.* at 657, 735 P.2d at 1163. There, we balanced the government interest in reducing drunk driving against the interference with individual liberty, and we held that drivers could be stopped at roadblocks as long as the roadblocks are reasonable. *Id.* at 658, 735 P.2d at 1164. We were primarily concerned with uniform procedures for stopping motorists. We emphasized that automobiles "should not be *stopped* randomly" because "[u]nrestricted discretion in determining which vehicle *to stop* leads to the evil we seek to avoid." *Id.* at 659, 735 P.2d at 1165 (emphasis added).

{9} Defendant does not assert that the officers at the roadblock in question failed to follow uniform procedures in stopping vehicles. Defendant argues that because roadblocks present an exception to the reasonable suspicion requirement, any aberration should be cause to invalidate roadblock stops. She argues that, unless we extend the requirement of uniformity to later stages of the roadblock, we will give police departments "a blank check ... for anything that occurs after a car pulls up to an orange cone."

■ {10} That is not the case. Each action after the initial stop is subject to judicial scrutiny. *See State v. Goss,* 111 N.M. 530,

534, 807 P.2d 228, 232 (Ct.App.1991) (analyzing detention and arrest of motorist stopped at roadblock after rejecting argument that the roadblock was unconstitutional). Under the New Mexico Constitution, after the checkpoint stop, a police officer cannot further detain a motorist without reasonable suspicion of criminal activity. *See State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 16, 130 N.M. 386, 25 P.3d 225 (analyzing state constitutional law as applied to stops at border checkpoints).

{11} Nor have any subsequent cases analyzing roadblocks extended the *Betancourt* analysis beyond the initial stop of the vehicle. Instead, we have the reasonableness requirement for roadblocks as providing "a constitutionally adequate substitute for the reasonable suspicion that would otherwise by required to justify *the detention* of vehicles and *the questioning* of their occupants." *Bates*, 120 N.M. at 460, 902 P.2d at 1063 (quoting *State v. Bolton*, 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct.App.1990) (emphasis added)).

{12} Defendant cites some out-of-state authority to support her argument that any deviation from the written roadblock plan will render all stops at that roadblock unconstitutional. For example, a Massachusetts court held that it was unconstitutional to extend the hours for a roadblock without supervisory approval. *See Commonwealth v. Anderson*, 406 Mass. 343, 547 N.E.2d 1134, 1138 (1989). A Hawaii court dismissed charges against a driver after an officer changed the location of a roadblock without supervisory approval. *See State v. Fedak*, 9 Haw.App. 98, 825 P.2d 1068, 1072 (1992). We do not agree that these cases can be read to establish Defendant's proposition. In these cases, neither of the defendant-drivers would have been stopped but for the unauthorized change. In *Fedak*, no roadblock had been approved at the location where the driver was stopped. *See id.* In *Anderson*, no roadblock had been approved for that time. *See Anderson*, 547 N.E.2d at 1138. Here, there was no connection between Defendant's stop and the police failure to charge Brother. Even if the police had charged Brother, Defendant would have still

been stopped and found to have a BAC above the legal limit. Notably, in *Anderson*, the court only invalidated a stop that occurred after the unauthorized extension. *See id.* That court did not consider whether the unauthorized extension would invalidate the arrest of drivers stopped during the authorized time period, and thus the case does not stand for the proposition that any roadblock irregularity will invalidate all stops.

{13} Defendant's argument that irregularities in post-stop procedures invalidates the roadblock itself is misguided. If a roadblock is unreasonable, then each stop made at that roadblock will be unconstitutional. *See generally Betancourt*, 105 N.M. at 656, 735 P.2d at 1162. On the other hand, most infirmities in post-stop procedures will only affect the charges against the individual driver involved. At that point, the constitutionality of the roadblock will no longer be at issue. For example, if it is found that police officers at a roadblock did not have probable cause to arrest one driver, that will not invalidate other arrests made at the same roadblock. Applying the same reasoning, we do not agree that APD's failure to charge one driver rendered any other stop unconstitutional. Instead, under the *circumstances of this case*, Defendant's arrest must be analyzed individually.

{14} We understand Defendant to argue that the release of Brother was part and parcel of the officers' discretion at this roadblock, and that the discretionary decision to release him violated the core *Betancourt* principle that discretion be restricted. We disagree with this argument because Sergeant Conrad ultimately testified that he did not have official discretion to release drunk drivers and that he was disciplined for doing so. Thus, we cannot say that this case involves any unconstitutional exercise of discretion. It does involve wrongdoing by the officers at the roadblock. But that wrongdoing had no impact on Defendant's stop, arrest, test, or conviction.

{15} Defendant concedes that the police followed constitutional guidelines in stopping her vehicle. She raises no argument regarding the grounds for her subsequent detention or arrest. We hold that there was no viola-

tion of Defendant's right to be free from unreasonable searches and seizures.

## The Failure to Charge One Intoxicated Individual Did Not Violate Equal Protection

{16} Defendant next argues that the police officers at the scene violated her right to equal protection of the laws when they charged her, but did not charge Brother. We read this argument as a claim of selective prosecution. To establish a claim of selective prosecution, a defendant must prove both a discriminatory effect and a discriminatory purpose. *State v. Estrada,* 2001–NMCA–034, ¶ 12, 130 N.M. 358, 24 P.3d 793. To establish a discriminatory effect, the defendant must prove that he or she was singled out for prosecution while others similarly situated were not. *Id.* To establish a discriminatory purpose, a defendant must prove that he or she was selected for prosecution "based on intentional, purposeful discrimination stemming from impermissible considerations, such as race, religion, or the exercise of a constitutionally protected right." *Id.*

{17} Defendant recognizes that this case is the inverse of a typical selective prosecution case, where one person is prosecuted even though many others committed the same offense. *See, e.g., State v. Cochran,* 112 N.M. 190, 191, 812 P.2d 1338, 1339 (Ct.App. 1991). Nonetheless, she argues that these facts establish a discriminatory effect. She asserts that the improper favorable treatment of one individual constitutes selective prosecution of all others who faced charges for their actions. We cannot agree. Our courts have consistently required that the individual in question be "singled out" for prosecution. *See Estrada,* 2001–NMCA–034, ¶ 12, 130 N.M. 358, 24 P.3d 793; *Cochran,* 112 N.M. at 192, 812 P.2d at 1340. Defendant was not singled out; she was one of many who were prosecuted based on breath alcohol test results proving that they had been driving while intoxicated. It was Brother who was singled out in this case.

{18} Even if we accepted Defendant's argument that the failure to charge Brother constituted a discriminatory effect, we do not agree that the police officers had a discrimi-

natory purpose in charging Defendant with DWI. Defendant presented no evidence showing that the police had an invidious reason for charging her with DWI. She does not claim that the decision to charge her was based on her race, religion, or her attempt to exercise constitutional rights. Instead, Defendant asserts that she was charged because she was not related to an APD officer. We do not agree that this constitutes a discriminatory purpose on the part of the arresting officers. Defendant presented no evidence showing that she was charged with DWI for any reason other than the simple fact that her BAC was above the legal limit. The officers' reasons for failing to charge Brother do not alter the reasons for charging other drivers, including Defendant, who were in fact driving while intoxicated. Even if the alleged discrimination in this case did not occur—if Brother had been charged with DWI Defendant would still have faced DWI charges. We hold that there was no violation of Defendant's right to equal protection.

## CONCLUSION

{19} We affirm Defendant's conviction for DWI.

{20} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.