This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38617**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**KALEB SCROGGINS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Cole P. Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

Patrick J. Martinez & Associates
Patrick J. Martinez
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Kaleb Scroggins appeals his convictions for knowingly leaving the scene of an accident (without causing great bodily harm), contrary to NMSA 1978, Section 66-7-203 (1978) and NMSA 1978, Section 66-7-201(A) and (C) (1989); the unlawful carrying of a firearm in a licensed liquor establishment, contrary to NMSA 1978, Section 30-7-3 (2010); breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); larceny (over $250), contrary to NMSA 1978, Section 30-16-1 (2006); attempted

aggravated battery upon a peace officer by use of a deadly weapon, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969) and NMSA 1978, Section 30-28-1 (1963); child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D) (2009); and criminal damage to property over $1,000, contrary to NMSA 1978, Section 30-15-1 (1963).

**{2}** Defendant raises three issues on appeal: (1) the State failed to present sufficient evidence to support his conviction of child abuse; (2) the district court erred in admitting evidence of Defendant's jailhouse telephone call recording; and (3) the State engaged in prosecutorial misconduct by intentionally withholding Defendant's jailhouse telephone call recording from the defense. For the reasons that follow, we reverse Defendant's convictions for child abuse by endangerment and affirm his remaining convictions.

## BACKGROUND

**{3}** Defendant was the primary suspect in a shooting that occurred during the early hours of June 18, 2017. After searching for Defendant in locations he was known to frequent, police officers located Defendant in his truck at Presidio Plaza in La Luz, New Mexico. When Defendant saw law enforcement pull into the plaza, he took off and led them on a high-speed chase, eventually running through a stop sign at the intersection of Highway 54 and Dog Ranch Road where he crashed into another vehicle. The crash occurred on the other side of the intersection, north of McGinn's Country Store (McGinn's). The passengers of the other vehicle were left with lasting injuries.

**{4}** Following the crash, Defendant got out of his vehicle, and Captain Kunihiro and Chief Syling saw him remove a handgun from his waist band. Believing that Defendant was going to shoot at them, Captain Kunihiro sought cover behind the other crashed vehicle, and heard five to ten gunshots, which he believed were coming from Defendant and Chief Syling's direction. Defendant then ran from the crash towards McGinn's. Another officer was also on the scene and saw Defendant running from the scene of the crash. After hearing gunfire, this officer shot at Defendant as he fled towards the front porch of McGinn's.

**{5}** There is a porch that wraps around the front and side of McGinn's, and an awning that covers the entirety of the building's porch. There is a koi pond situated directly outside of the entrance to McGinn's. On the day of the incident, there were multiple vehicles parked in front of McGinn's along the east-side of the building. Because of the awning that covers that porch and where the vehicles were parked, a clear view of McGinn's entrance is obstructed when observed from the northeast. At the time, Defendant crashed into the other vehicle, Mr. Espeleta was on the front porch of McGinn's, observing the koi pond with his three-year-old daughter, A.E. Mr. Espeleta heard the crash and began walking towards the commotion until he saw Defendant get out of his vehicle and heard shooting. Once Defendant began to run towards McGinn's front porch, Mr. Espeleta ran back inside McGinn's with A.E., where he and A.E. hid in a walk-in freezer. Security footage demonstrated that Defendant reached the front

entrance of McGinn's approximately one minute after Mr. Espeleta took cover with A.E. inside the store.

**{6}** Defendant was indicted for numerous crimes as a result of the events, and the case proceeded to a jury trial. Defendant testified on his own behalf during which he admitted that he sped through the intersection of Highway 54 and Dog Ranch Road causing the accident with the other vehicle. Defendant also expressed sympathy toward the victims of the crash.

**{7}** On cross-examination, Defendant testified that he knew his jailhouse telephone calls from earlier in the week were recorded. The State then sought to impeach Defendant through the admission of a recording made of Defendant's jailhouse telephone call. Prior to Defendant's cross-examination, the State did not disclose the existence of the recording to defense counsel. Defendant objected to the admissibility of the recording, but the district court concluded that the recording was rebuttal evidence and the State's discovery obligations did not apply. The district court adjourned the proceedings until after lunch to allow Defendant time to review the recording.

**{8}** After lunch, Defendant moved for a mistrial or reconsideration of the district court's decision to allow the State to impeach Defendant with the recording. Although Defendant acknowledged that the State had burned the telephone call recording to a disc that morning, Defendant maintained that its existence should have been disclosed before Defendant took the stand because, Defendant would not have testified and defense counsel would not have inquired about his sympathy toward the crash victims had he been aware of the recording. The district court denied both Defendant's motion for a mistrial and his motion to reconsider.

**{9}** When cross-examination resumed, Defendant admitted that during a jailhouse telephone call earlier that week, he claimed the crash victim's testimony was "bullshit," and that the "motherfuckers in there crying: '[Defendant] you ruined my life. I can't walk anymore.'" Defendant continued making derogatory statements directed towards the victim, blaming her age and weight for the injuries she sustained. As cross-examination continued, Defendant also testified that after he fled from the crash site towards McGinn's front porch, he did not see anybody outside the store.

**{10}** The jury convicted Defendant and this appeal followed.

**DISCUSSION**

**I.     Insufficient Evidence to Support Defendant's Child Abuse Conviction**

**{11}** Defendant argues there was insufficient evidence to convict him of child abuse. We agree. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and

citation omitted). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 24, 390 P.3d 185. "This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344. "[T]he jury is free to reject [the d]efendant's version of the facts," *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829, and we do not "consider the merit of evidence that may have supported a [different result]." *State v. Kersey*, 1995-NMSC-054. ¶ 11, 120 N.M. 517, 903 P.2d 828 (internal quotation marks and citation omitted.

**{12}** In order to convict Defendant of negligent child abuse by endangerment, the jury was required to find beyond a reasonable doubt that Defendant:

> (1) engaged in a high speed chase and ran a stop sign in front of [H]ighway 54 and/or engaged in menacing conduct with a handgun towards officers while [A.E.] was nearby;
>
> (2) [b]y engaging in [such] conduct, . . . Defendant caused [A.E.] to be placed in a situation that endangered the life or health of [A.E.];
>
> (3) [Defendant] showed a reckless disregard [without justification] for the safety or health of [A.E.]

*See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (stating that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured" (alterations, internal quotation marks, and citation omitted)). The jury instructions specified that "reckless disregard" requires that Defendant's "conduct was more than merely negligent or careless," and that Defendant "caused a substantial and unjustifiable risk of serious harm" to A.E., which means a law-abiding person would have behaved differently out of concern for the safety or health of [A.E.]" *See State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 (clarifying that "criminally negligent child abuse" should be labelled as "reckless child abuse," which generally requires the actor to "consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation" (internal quotation marks and citation omitted)). We agree with Defendant that the evidence was insufficient to support his conviction for child abuse.

**{13}** The first element the State was required to prove for the jury to find Defendant guilty of child abuse by endangerment was that Defendant (1) "engaged in a high speed chase and ran a stop sign in front of [H]ighway 54" and/or (2) "engaged in menacing conduct with a handgun towards officers" all "while [A.E.] was nearby" We address both scenarios that would fulfill the State's burden in turn.

**{14}** The State presented evidence that Defendant engaged in a high speed chase for three and a half miles that did not end until Defendant ran the stop sign at Dog Ranch Road and U.S Highway 54 when he collided with the other vehicle, on the opposite side of the intersection from McGinn's.

**{15}** Alternatively, the State presented evidence that following the crash, law enforcement observed Defendant with a handgun, and believed that Defendant was exchanging gunfire with them. Assuming that Defendant at the very least brandished a gun, despite the evidence presented at trial reflecting that the gunfire came from the law enforcement's firearms, it is clear that the State fulfilled its burden to prove that Defendant "engaged in menacing conduct" towards the officers.

**{16}** Based on our review of the record however, the State did not present evidence to fulfill the third element required by the jury instruction, that Defendant "showed a reckless disregard for the safety or health of [A.E.]," in either of these scenarios.

**{17}** The present case is distinguishable from other cases concerning the sufficiency of the evidence to support a conviction of child abuse by endangerment, because the defendants in those cases were *aware* of the child's existence and presence, and the risk of danger to the child's life or health was foreseeable. *See State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891 (establishing factors for courts to consider in determining "whether the risk created by an accused's conduct is substantial and *foreseeable*" regarding child abuse by endangerment (emphasis added)). In *Chavez*, the Supreme Court reversed the child abuse conviction of a defendant whose infant daughter died as a result of the defendant placing her temporarily in a removed dresser drawer because there was insufficient evidence to show that the defendant's conduct created a substantial and foreseeable risk that the infant would suffer a serious injury. *See id.* ¶ 52. Similarly, in *State v. Trujillo*, this Court reversed a child abuse conviction for a defendant whose child was on the other side of the door when he committed aggravated battery on the child's mother because the defendant did not threaten the child, there was no indication of intent to harm the child, and the child did not come within the range of the defendant's violent conduct. *See* 2002-NMCA-100, ¶¶ 5, 18, 132 N.M. 649, 53 P.3d 909

**{18}** Here, the State did not present evidence that Defendant was aware of the store's existence during the high speed chase, much less the existence of A.E. or her presence at McGinn's when all of this occurred. When Defendant's vehicle came to rest after the crash, it was situated north of McGinn's on Highway 54 on the outside of the wooden fence that surrounds the land that McGinn's is located. While there was gunfire exchanged near the store, A.E. was outside on the porch of McGinn's for only approximately thirty seconds after Defendant crashed into the other vehicle. Furthermore, the State did not present evidence of how close the gunfire exchange took place from the front of the store or that any of the bullets struck the front of the building or near the koi pond where Mr. Espeleta and A.E. had been. It is unclear to this Court how Defendant showed a reckless disregard specifically for the health or safety of A.E. when the State presented no evidence that he knew or should have known of her

presence at McGinn's that morning, that Defendant's actions were intended to harm A.E., or that his actions created a foreseeable risk to A.E.'s health or safety. *See* § 30-6-1(D)(1) (stating that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health"); *see also Trujillo*, 2002-NMCA-100, ¶¶ 5, 18; *Chavez,* 2009-NMSC-035, ¶ 52.

**{19}** Contrary to Defendant's argument in his brief in chief, the State was not required to prove that A.E. was situated "directly in the line of physical danger from a lethal weapon by [Defendant] or the officers who were shooting at him." And while the State presented evidence to prove A.E.'s proximity to the dangerous situation, mere proximity is insufficient to support a conviction for child abuse by endangerment. *See Trujillo*, 2002-NMCA-100, ¶ 18 ("[M]ere proximity to a dangerous situation was insufficient to support a conviction for child abuse by endangerment." (internal quotation marks and citation omitted)).We hesitate to affirm a conviction for child abuse by endangerment from a scenario in which a child was in the general proximity of a dangerous situation, but no evidence was presented about the actual danger to the child. To do so would open the door to the State to have unrestrained authority to bring child abuse charges in situations in which children might be found nearby.

**{20}** For the foregoing reasons, we conclude that the State failed to present sufficient evidence that Defendant showed reckless disregard for the safety or health of A.E., and reverse his child abuse by endangerment conviction.

## II.    Jailhouse Telephone Call Recording

**{21}** Before turning to our discussion of the two remaining issues raised in this appeal that stem from the recording of his jailhouse telephone phone call, we note that Defendant's arguments are undeveloped, unsupported, or otherwise generally offer insufficient analysis for purposes of our review. We will not review undeveloped or unsupported arguments. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and . . ., given no cited authority, we assume no such authority exists."); *see generally* Rule 12-318(A)(4) NMRA (setting out the briefing requirements, including the requirement that appellate briefs cite applicable New Mexico case law). Thus, our review is limited to the aspects of Defendant's contentions that are adequately developed.

### A.    Late Disclosure of Evidence

**{22}** Defendant first argues that the district court erred by admitting evidence of his jailhouse telephone recording. At trial, the State sought the admission of the recording of Defendant's jailhouse telephone call made after the beginning of trial where Defendant made comments regarding the crash victims. Defendant objected on the

basis that the recording had not previously been disclosed to the defense. On appeal, the State concedes that "the prosecution was obligated to promptly notify the defense of the recorded statements and that the prosecution's disclosure after [Defendant's] testimony on direct examination was late." However, the State maintains that although the disclosure of the statements were delayed, in light of the remaining evidence presented at trial, the statements were not material.

**{23}** "We review a district court's ruling on late discovery for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non[]disclosed evidence was material; (3) whether the non[]disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted).

**{24}** "The test for materiality . . . is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted). "As for determining whether the defendant has been prejudiced, . . . we look at whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *Id.* (alteration, internal quotation marks, and citation omitted). Defendant bears the burden of proving that he was prejudiced by the evidence's late disclosure. *See State v. Ortega*, 2014-NMSC-017, ¶ 43, 327 P.3d 1076.

**{25}** Defendant argues "it would not have been part of defense counsel's strategy to question [Defendant] on his remorse for the victims" had the recording of the jailhouse call been disclosed prior to his testimony. We agree that the recording of Defendant's jailhouse call was likely prejudicial, and he would not have testified or testified differently had he been aware of the recording prior to taking the stand. *See Duarte*, 2007-NMCA-012, ¶ 15. However, Defendant does not establish exactly how the admission of the recording was material. More specifically, Defendant does not make it clear to this Court how the late disclosure and subsequent admission of his jailhouse call recording "undermine[d] the confidence in the outcome" of his trial. *Id.* Therefore, we conclude that the district court did not abuse its discretion by admitting Defendant's jailhouse call recording.

**B.     Prosecutorial Misconduct**

**{26}**     Defendant contends that the State committed prosecutorial misconduct by failing to timely disclose the recording of Defendant's jailhouse telephone call, and thus, prejudiced him and deprived him of a fair trial.

**{27}**     Defendant does not support his assertion that the prosecutor engaged in misconduct with citations to legal authority. Further, Defendant's argument on this is limited to one paragraph of conclusory statements, and he does not offer any explanation of how the late disclosure of the recording caused him prejudice. *See* Rule 12-318 NMRA (A)(4); *State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611 ("Mere assertion of prejudice is not a showing of prejudice."). As such, we decline to address this argument further. *See Fuentes*, 2010-NMCA-027, ¶ 29; *Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288.

**CONCLUSION**

**{28}**     For the reasons stated above, this Court reverses Defendant's child abuse conviction, and we affirm the remaining convictions.

**{29}     IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**