**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-102**

**Filing Date: July 30, 2009**

**Docket No. 27,615**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MARTIN ARAGON,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}**    Defendant was convicted on one count of child abuse resulting in great bodily harm. On appeal, he challenges the effectiveness of his trial counsel on several grounds. Based on counsel's failure to interview the State's experts and obtain or consult with an expert, we hold that Defendant has made a prima facie case for ineffective assistance of counsel. We remand those two issues to the trial court for further factual development in an evidentiary hearing. We further hold that Defendant failed to make a prima facie case for ineffective

1

assistance of counsel on the remaining claims.

## I.    BACKGROUND

**{2}**    On December 30, 2004, Defendant was indicted by grand jury on one count of abuse of a child resulting in great bodily harm, contrary to NMSA 1978, Section 30-6-1 (2004) (amended 2005).  The indictment arose from the events of December 8, 2004.  On that day, it is undisputed that Defendant was left alone with Child, who was Defendant's four-month-old son.  When Child's mother returned an hour and a half later, Defendant met her outside. He told her that Child appeared to have been choking and that he shook Child in an attempt to resuscitate him.  Child's condition deteriorated overnight, and he was taken to a clinic the following day.  Mother told the doctor at the clinic, Dr. Olmstead, that Child's eighteen-month-old brother had fallen onto Child.

**{3}**    Dr. Olmstead testified that she evaluated Child and that while in her presence, Child suffered a seizure and stopped breathing.  Dr. Olmstead then called for emergency transport because she was "concerned about . . . [the] imminent death if this child did not receive treatment as soon as possible."  Child was transported to the University of New Mexico Hospital, where Dr. Coleman took over Child's care.

**{4}**    Dr. Coleman testified that Child's injuries included extensive brain injuries, rib fractures, spinal cord and neck injuries, and a femur fracture; that the rib fractures predated the other injuries and were between ten and fourteen days old; and the remaining brain, spinal, and neck injuries had been inflicted more recently—and were between twenty-four and seventy-two hours old; and that the femur fracture could not be dated.  We will refer to the rib fractures as the "old injuries" and the remaining injuries—excepting the femur fracture—as the "new injuries."  Based on her evaluation of all of Child's injuries, Dr. Coleman called Dr. Campbell, who was a member of the child abuse response team.  Dr. Campbell concluded that Child "had injuries that were diagnostic of abuse."

**{5}**    When Mother was initially interviewed by a police detective, she told him the same story that she had told Dr. Olmstead.  Eventually, however, Mother changed her story and told the police that Defendant had admitted to shaking Child.  She also told the detective that Defendant had prevented her from seeking help for Child.  Defendant was arrested during the following week, was arraigned on January 13, 2005, and pled not guilty to the charge. On January 18, 2005, an attorney who was on contract with the public defender department was appointed as counsel for Defendant.

**{6}**    Defendant waived his right to a jury trial and was tried by the court on October 31, 2005, and November 1, 2005.  The State presented the expert testimony of three doctors. Defendant put on no expert testimony.  Defendant was convicted, and the trial court imposed a mandatory 18-year sentence.  Defendant appeals.

## II.    DISCUSSION

2

**{7}** Defendant argues that his counsel was ineffective because she (1) failed to interview the State's medical experts, (2) failed to consult with or retain a defense expert, and (3) failed to file a motion to mitigate the length of his sentence. Defendant also argues that certain rulings by the trial court rendered his counsel ineffective, based on the reasoning in *State v. Schoonmaker*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105.

**{8}** Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo. *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. Because Defendant raises the issue for the first time on appeal, he must establish a prima facie case for ineffective assistance in order for this Court to remand the matter to the trial court for an evidentiary hearing. *See State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289. "A prima facie case is made out when: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted). We begin by addressing counsel's actions and inactions, and then we turn to the rulings of the trial court.

**A.     Counsel's Actions**

**1.     Medical Experts**

**a.     Unreasonableness and the Strategic or Tactical Basis for Counsel's Actions**

**{9}** We first consider whether defense counsel acted unreasonably and without a strategic or tactical basis when she failed to interview the State's experts and retain or consult with an expert for Defendant. *See Herrera*, 2001-NMCA-073, ¶ 36. There is no dispute that defense counsel failed to conduct pre-trial interviews of the State's experts. The record provides no tactical or strategic basis for this failure, as the expert testimony was critical to proving the State's case. Defense counsel was appointed on January 18, 2005. On February 23, 2005, the State filed a witness list, which included Dr. Campbell, one of the State's experts. The record shows that the State contacted defense counsel to schedule the interviews as early as April 2005 and that defense counsel did not respond. On August 30, 2005, the State provided defense counsel with the phone number of the primary expert—apparently not for the first time. The email exchanged between defense counsel and the State establishes that the State did not promise to arrange for the interviews but instead made clear that such was the responsibility of defense counsel. By her own admission, defense counsel did not speak with Dr. Campbell until late October—in the week before trial, and that interview was a phone conversation instead of an interview or deposition.

**{10}** On August 10, 2005, the State filed an amended witness list, which included two additional doctors. Defense counsel did not contact those witnesses in the two months prior to trial. Defense counsel asserted that she was waiting for the State to set up contact. In arguing for more time, defense counsel stated that "it's a state witness, it's an expert, and it

3

seems to me only fair that they should provide them to me."

{11}    It is undisputed that throughout the pretrial process, Defendant possessed a list of witnesses and a means of contacting those witnesses. Such is the State's sole obligation under Rule 5-501(A)(5) NMRA. We further observe that Defendant provides no authority for the proposition that it is the State's responsibility to actually arrange the interviews. Absent an agreement between the parties, we will not impose an independent duty on the State to act as a scheduler. *Cf. State v. Johnson*, 2007-NMCA-107, ¶¶ 22, 32, 142 N.M. 377, 165 P.3d 1153 (acknowledging that when the state agrees to arrange interviews, it has an obligation to follow through). We turn next to consider whether, based on the theory of defense, there was a reasonable trial strategy to justify defense counsel's failure to retain or consult with an expert.

{12}    There are two aspects to Defendant's claim relating to the failure to obtain an expert. First, given the importance of expert medical testimony to proving the State's case, we note that Defense counsel filed a motion for a continuance in May 2005, indicating that "[a]dditional time is needed to fully investigate this case and to obtain an expert witness for the defense." Later, counsel suggested that an expert would be helpful in her review of medical documents. Regardless of any need or intention to do so, no expert was retained—or apparently even consulted. Second, Defendant asserts ineffective assistance because no experts were retained to testify on his behalf. While we have generally held that Defendant has not been prejudiced by such inaction in absence of availability of a witness, expert testimony was the crux of this case. *See State v. Crain*, 1997-NMCA-101, 124 N.M. 84, 946 P.2d 1095; *see also State v. Hernandez*, 115 N.M. 6, 846 P.2d 312 (1993).

{13}    It was not contested at trial, nor is it contested on appeal, that Defendant shook Child on December 8, 2004. Defendant's theory at trial was that earlier injuries—caused by someone else—were exacerbated by his actions on December 8. In particular, Defendant pointed out that there was no evidence, apart from the timeline of events, to establish that he shook Child with the force that the State's medical experts testified would have been necessary to cause Child's new injuries. Because there were no witnesses to Defendant's actions on December 8, Defendant asserts that his case depended on his credibility and on expert testimony to establish a factual basis for Defendant's theory that Child's new injuries stemmed from reinjury or exacerbated existing injuries. *See Schoonmaker*, 2008-NMSC-010, ¶ 33 (explaining that because there were no witnesses to the incident, expert testimony "was critical to the defense to call into question the [s]tate's expert opinions that [the c]hild's injuries could only have been caused by shaking of a violent nature").

{14}    The State argues that defense counsel's failure to retain an expert witness was tactical because "she was going to base the defense not on challenging [the scientific] facts but on establishing that Defendant did not [injure Child]." We are unpersuaded. As the State itself points out, "there was no evidence admitted at trial that anyone but . . . Defendant was with [Child] when the injuries occurred on the afternoon of December 8, 2004." Thus, the primary evidence that ties Defendant to the injuries is timing—Mother testified that Child was fine before she left him with Defendant and that Child was injured when she returned. Defendant could not refute the State's timing evidence without medical testimony to

4

question the causation of Child's injuries and suggest that Child had been injured earlier, before Child was in his care, but that the symptoms of the injuries did not noticeably manifest until a later time. We see no tactical reason not to employ a medical expert in an attempt to substantiate Defendant's theory. In addition, nothing in the record indicates that defense counsel was evaluating whether to call an expert.

**{15}** It is not necessary for us to address the retention of a testifying expert. Defense counsel, in her motion for continuance, pointed out that a consulting expert would be useful to help prepare the case by explaining the medical reports that had recently been received. We agree that a consulting expert was necessary to understand the nature of the State's evidence and to prepare an adequate defense. The failure of defense counsel to retain any sort of expert in the months prior to trial allows us to reach our conclusion. Thus, based on her failure to engage an expert for consultation, combined with her failure to conduct adequate pre-trial interviews of the State's experts, we conclude that defense counsel acted unreasonably and without any strategic or tactical justification. Defendant has established two of the three criteria required to demonstrate a prima facie case of ineffective assistance for counsel. *See Herrera*, 2001-NMCA-073, ¶ 36. We now turn to consider the final factor: whether Defendant was prejudiced by defense counsel's errors.

### b.    Prejudice

**{16}** A defendant must demonstrate that his counsel's errors prejudiced his defense such that there was "a reasonable probability that the outcome of the trial would have been different." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948. Defense counsel's own lack of diligence resulted in failure to adequately interview the State's experts or consult with an expert to prepare for trial. These failings in turn resulted in an inability to present Defendant's theory through effective cross-examination of those experts. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 34, 130 N.M. 198, 22 P.3d 666 (determining that adequate cross-examination eliminated a "reasonable probability that consultation with experts would have affected the outcome of the trial"). Counsel then did not remedy these initial failings by engaging an expert to explain Defendant's theory at trial, thus eliminating his only line of defense to the State's charges.

**{17}** After the parties made their closing arguments, the trial court ruled from the bench with the following comments:

> The, undisputed evidence that basically is that, there, that [C]hild was, was okay when he was left in the charge of [Defendant], and when [C]hild's mother came back, [C]hild manifested all the symptoms that the doctors said were indicative of child abuse and shaken baby syndrome.
> It does concern the [c]ourt, it's kind of, that there, (indiscernible) that there are two discrete, at least two discrete child abuse injuries, but we'll, we'll know, we'll obviously not know about what caused the first one. But we do, I think under the evidence that we have at hand, beyond a reasonable doubt know what caused the second injury.

Based on the evidence presented, the trial court concluded that the timeline demonstrated that Defendant must have caused the new injuries. Accordingly, there is a reasonable probability that the outcome of the trial would have been different had defense counsel engaged an expert to substantiate the defense theory—that the injuries manifested on December 8 were actually inflicted on an earlier date by another person. Although the failure to retain a defense expert will not establish in every case the prejudice necessary to make a claim for ineffective assistance of counsel, under the facts of the present case it is clear that without an expert to either assist in trial preparation or to testify on Defendant's behalf, Defendant was deprived of his only avenue of defense.

**{18}** The State argues that Defendant suffered no prejudice because non-expert testimony undercut his defense theory. In support of this argument, the State points out that Defendant admitted to shaking Child and argues that no expert would have been able to refute Defendant's admission or "the undisputed evidence of Defendant's consciousness of guilt." This argument assumes that all experts would agree that any amount or type of shaking would cause the injuries that Child suffered. Defendant's theory was that although he shook Child, he did not do so in a violent enough manner to cause Child's new injuries and that the new injuries were the result of someone else's earlier actions. This theory—if it had been supported by evidence—could have survived Defendant's admission that he shook Child. Further, the theory is not undone by the evidence that Defendant hid from the police—it was undisputed that Defendant knew he had done something wrong. The State would still have been required to prove that Defendant's wrongdoing was specifically the cause of Child's extensive new injuries.

### c.    Prima Facie Case

**{19}** Having determined that defense counsel's actions were unreasonable and had no strategic or tactical purpose and that those actions prejudiced Defendant, we hold that Defendant has established a prima facie case for ineffective assistance.

**{20}** Defendant argues that based on these prejudicial errors, we should remand his case for a new trial. We disagree. Generally, we prefer that claims for ineffective assistance of counsel be brought by habeas petition. *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494. Nevertheless, "New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings" because "the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *Id.* (internal quotation marks and citation omitted). In the past, we have required a defendant to show that an expert would have been—not could have been—available to testify at trial. *See Crain*, 1997-NMCA-101, ¶ 33. On cross-examination, Defendant referred to a number of medical studies to establish that his defense theory is not without support in the medical community. Based on our catalogue of defense counsel's failures and inactions, it would be impossible for the current record to demonstrate that an expert was actually available to testify in this regard. On the other hand, it would be futile to remand the matter for a new trial if no expert is available to bear out Defendant's theory. Accordingly, an evidentiary hearing is appropriate to explore these issues. *See State v. Paredez*, 2004-NMSC-036, ¶¶ 22, 24, 136 N.M. 533, 101 P.3d 799

6

(remanding for an evidentiary hearing in part because "the record indicate[d] . . . a distinct possibility" that the defendant's attorney acted unreasonably and that those actions resulted in prejudice to the defendant). We remand for the trial court to conduct an evidentiary hearing regarding defense counsel's failure to interview the State's expert witnesses and failure to consult with or retain an expert.

## 2.    Motion to Mitigate

**{21}**    Defendant also argues that his counsel was ineffective because she failed to file a motion setting forth mitigating factors. As we have stated, in evaluating a direct appeal based on ineffective assistance of counsel, we consider whether defense counsel acted unreasonably, whether counsel's actions can be justified by trial strategy or tactics, and whether the defendant was prejudiced by counsel's unjustified errors. *See Herrera*, 2001-NMCA-073, ¶ 36. After reviewing the record, we discern no error on counsel's part for failing to file the motion.

**{22}**    Defendant asserts that at the sentencing hearing, the trial court stated that "it believed a lesser sentence was appropriate" and that the court invited "defense counsel to file a motion setting forth mitigating factors." As a result, Defendant maintains that if counsel had filed a motion, "it is likely that [Defendant] would have received a reduced sentence." Our review of the sentencing hearing does not support Defendant's characterization of the interchange between counsel and the trial court.

**{23}**    At the hearing, the trial court spoke at length about the difficulties surrounding mandatory sentencing provisions and the resulting unfairness that stems from removing the trial court's discretion. Despite these concerns, the court stated that "I'm going to sentence him to 18 years because I think that's what society demands. I think, given the circumstances of the crime, his past history, that's what I have to do. I take no pleasure in it." Defense counsel suggested that the trial court could reduce the sentence based on mitigating factors. The trial court expressed some doubt, and the State indicated that Defendant would have to file a motion. The trial court told defense counsel that "If you file a motion, I'll consider it." Then the trial court continued and warned defense counsel: "You'll have to [show] me the mitigating circumstances and I would have to take—that would have to be—I would have to make a finding of mitigating circumstances. You would have to show me those mitigating circumstances. I'm not going to do that on whim."

**{24}**    There is no indication in the record to suggest why counsel failed to file the motion, and it is conceivable that based on the comments of the trial court, counsel strategically opted not to proceed with the motion. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 39, 145 N.M. 719, 204 P.3d 44 ("If there is a plausible, rational strategy or tactic to explain counsel's conduct, a prima facie case for ineffective assistance is not made."). Thus, we perceive no error for failing to file the motion.

**{25}**    Further, Defendant did not establish that the trial court would have reduced the sentence but for counsel's failure to file the motion. On appeal, Defendant identifies the following mitigating circumstances: doubt regarding the source of Child's injuries,

7

Defendant's history of having been abused as a child, and Defendant's subsequent rehabilitative efforts. All of this evidence had already been presented to the trial court during the course of the trial. The verdict demonstrates that based on the evidence before it, the trial court had no reasonable doubt about the source of Child's new injuries. Defendant's unfortunate history of being abused came to light during the trial when defense counsel played a video taped interview between the investigating detective and Defendant. Finally, the trial court referred to Defendant's efforts at rehabilitation during sentencing, but ultimately concluded that he was bound to impose the mandatory sentence. After having been exposed to all of this mitigating evidence, the trial court stated "I don't think there's any mitigating circumstances, frankly."

**{26}** Based on this, we hold that Defendant has not established that he was prejudiced by his counsel's failure to file a motion setting forth mitigating factors. Consequently, Defendant has failed to establish a prima facie case for ineffective assistance of counsel based on defense counsel's failure to file a motion laying out mitigating factors.

## B.    Trial Court Rulings

**{27}** Defendant also argues that his counsel was rendered ineffective by three of the trial court's rulings. Specifically, Defendant contends that "[b]y denying defense counsel's motions and refusing to grant any other form of relief, the [trial] court actively caused or contributed to defense counsel's incompetence." This argument is based on our Supreme Court's reasoning in the recent *Schoonmaker* opinion.

### 1.    *Schoonmaker's* **Presumption of Prejudice**

**{28}** In *Schoonmaker*, private defense counsel filed a motion to withdraw because the public defender department would not pay for an expert witness when the defendant was not represented by the department. 2008-NMSC-010, ¶¶ 7-8. The court would not permit counsel to withdraw, and counsel was faced with a dilemma: "refuse to proceed without an order of withdrawal and risk being held in contempt, or proceed without necessary experts." *Id.* ¶ 36. Under those circumstances, our Supreme Court presumed that the defendant was prejudiced because "counsel's potential ineffectiveness is expressly brought to the attention of the [trial] court and is occasioned by the rulings of the court itself." *Id.*

**{29}** In the present case, Defendant argues that his counsel was similarly rendered ineffective by three of the trial court's rulings: (1) the denial of a motion to continue so that counsel could interview certain witnesses, (2) the denial of a motion to exclude evidence, and (3) the admission of certain medical testimony. We consider each of these rulings to determine whether they forced defense counsel to provide ineffective assistance of counsel.

**{30}** On October 28, 2005—three days before trial—Defendant filed a motion requesting "a reasonable time to interview the State's experts." The trial court held a hearing on the same day and denied the motion to continue the trial. As we have already determined, counsel's failure to interview witnesses was the result of her own inaction. Thus, the denial of the motion to continue for the purpose of interviewing the State's witnesses did not render

8

counsel ineffective—the need for the motion under these circumstances demonstrates that counsel had already been ineffective.

**{31}** In the same October 28, 2005 motion, Defendant requested the trial court to exclude the testimony of two medical expert witnesses who were disclosed late by the State, as well as any reference to certain medical records that the State disclosed on October 21, 2005. The trial court denied the motion and observed that those records were as accessible to defense counsel as they were to the State. In addition, although the State did not disclose two of its medical witnesses until August, defense counsel had at least two months to interview those witnesses before trial. Thus the trial court's failure to remedy the State's late disclosure of records and witnesses did not cause the prejudice to Defendant—defense counsel's failure to seek records that were available and failure to interview identified witnesses caused the prejudice to Defendant.

**{32}** We have struggled with Defendant's last argument. He appears to make two arguments related to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). First, Defendant contends that the trial court improperly delayed the *Daubert* hearing. Second, Defendant maintains that because the trial court's rulings prevented him from interviewing the State's experts or from obtaining an expert, the trial court had a heightened obligation to question the State's experts at that hearing. Again, defense counsel was responsible for any prejudice that resulted from these rulings. The motion challenging the State's experts was filed on the day of trial—any delay in the hearing is squarely defense counsel's responsibility. In addition, defense counsel was not prevented by the trial court's rulings from conducting interviews or obtaining an expert—she simply did not do so.

**{33}** We have already determined that it was unreasonable for defense counsel to fail to interview the State's experts and retain or consult with an expert. None of the trial court's rulings forced defense counsel to act unreasonably. *See Herrera*, 2001-NMCA-073, ¶ 36. Counsel's own actions led to the rulings and to any resulting prejudice. Accordingly, counsel's ineffectiveness was not "occasioned by the rulings of the court" and we decline to apply the *Schoonmaker* presumption of prejudice. *Schoonmaker*, 2008-NMSC-010, ¶ 36.

**2.      Unreasonable Error**

**{34}** Even were we to accept Defendant's argument that prejudice should be presumed, we are further unpersuaded that the trial court should have ruled differently under the circumstances. *See id.* ¶ 40 (holding that the trial court should have ruled differently to avoid rendering the defendant's counsel ineffective). We address each ruling in turn and conclude that the trial court did not abuse its discretion. *See State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20 (reviewing a ruling on a motion for continuance for abuse of discretion); *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (reviewing a trial court's ruling on late discovery for abuse of discretion); *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993) ("[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion.").

9

### a.    Motion for Continuance

**{35}**    In order to determine whether a trial court improperly denied a defendant's motion for a continuance, we consider a number of factors. *Torres*, 1999-NMSC-010, ¶ 10; *see State v. Salazar*, 2007-NMSC-004, ¶¶ 11, 28, 141 N.M. 148, 152 P.3d 135 (applying the *Torres* factors in an appeal in which the defendant argued that the denial of a motion to continue the trial rendered trial counsel ineffective).  Those factors include:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*Torres*, 1999-NMSC-010, ¶ 10.

**{36}**    We first observe that the length of the requested delay was "a reasonable time" to interview the witnesses, and Defendant did not offer a specific estimate of how much additional time was needed to prepare for trial.  Defendant did, however, indicate that the six-month rule was set to run in mid-February.  *See Salazar*, 2007-NMSC-004, ¶ 21 (presuming that a defendant wanted enough time to accomplish his stated goals).  Defendant also offered the trial court no indication of the steps that had already been taken to accomplish the stated objectives or what would have been done in the future to secure interviews or an expert.  *Cf. Torres*, 1999-NMSC-010, ¶ 16 (concluding that the requested delay was reasonably likely to achieve the stated objectives because the defendant had already taken action and that future action was likely to achieve the desired result).

**{37}**    The third and fourth *Torres* factors weigh the existence of previous continuances and the inconvenience of further delay.  The original trial date was set for May 16, 2005.  Defendant filed a motion to continue that setting, which was granted.  In addition, two six-month rule extensions were granted, with Defendant stipulating to at least the first extension.  Defendant's position on the second rule extension is not in the record.  Ultimately, the six-month rule was extended until February 12, 2006.  The delay between the original trial date and the actual trial date was approximately five and a half months.

**{38}**    On October 26, 2005, anticipating a motion by Defendant to again continue the trial, the State filed a motion vigorously opposing an additional continuance.  At the October 28, 2005 hearing, the State argued that any further delay would be prejudicial because memories fade and because one of its experts would soon be unavailable due to an illness.  The trial court also observed that the offense and the indictment had happened "almost a year ago" and that it was "time to get these cases on."  Although it is clear that "the trial court's generalized concerns about expediency are not sufficient to override [a defendant's] constitutional right to compulsory process," the State opposed the continuance and demonstrated that inconvenience would result if the time for trial was extended beyond December, when its witness would no longer be available.  *Torres*, 1999-NMSC-010, ¶ 17

(explaining that the parties would have to establish "significant or substantial inconvenience" in order to warrant consideration as a factor).

**{39}** The State argues that Defendant had an illegitimate motive for moving for a continuance. We have already commented on the quality of defense counsel's representation based in part on her failure to interview these witnesses. We are not persuaded by the record that defense counsel's motive was entirely to delay the proceedings, as the State suggests. The need to interview witnesses and review records is manifest in this case. We do not regard the request itself as illegitimate. The State offers no evidence or citation to the record to establish that defense counsel's motive was other than what was claimed—to finally act to secure witnesses and conduct interviews.

**{40}** The next *Torres* factors evaluate whether the need for the delay was caused by Defendant and what prejudice would result if the continuance was denied. *See* 1999-NMSC-010, ¶ 10. The State argues that the fault for the delay was entirely Defendant's: Defendant failed to interview the State's experts and failed to alert the court to any difficulties that she was having in arranging for the interviews. Defendant contends that the State is partly to blame for the failure to interview because the State promised to arrange for an interview with one expert and failed to timely disclose two other experts. As explained above, Defendant has an independent duty to investigate and pursue witness interviews in this case. Here, the State bears little responsibility for the delay. Defense counsel had over eight months to interview one witness and two and a half months to interview the remaining witnesses, and she failed to do so. Defense counsel did not alert the trial court to any difficulties in contacting the witnesses, and the court was unaware of any problems until three days before trial. Based on this, we conclude that Defendant alone bears the responsibility for the need for a continuance.

**{41}** Defendant claims that as a result of the trial court's failure to grant a continuance, he was prejudiced because he was unable to call or consult with an expert and thereby establish his theory of the case, which we have already described. *See id.* (describing the final factor as "the prejudice to the movant in denying the motion"). We agree that counsel's failure to call an expert or interview the State's experts was prejudicial to his defense. Nevertheless, weighing this factor together with the other *Torres* factors, we conclude that the trial court did not abuse its discretion by denying a continuance. The case had been delayed three times already, once at Defendant's request and at least once with Defendant's approval. Defendant provided no indication of how much more time was required or how his stated objectives would have been achieved. The State established that further delay would harm the prosecution, and the record demonstrates that the need for the delay was rooted in Defense counsel's failure to arrange for interviews. Accordingly, we hold that the trial court did not render Defendant's counsel ineffective by denying the October 28, 2005 motion for a continuance. We now turn to the trial court's denial of Defendant's motion to exclude the late-disclosed medical records and the testimony of the late-disclosed medical experts.

**b.     Evidentiary Ruling**

**{42}** In order to determine whether a ruling on late discovery requires reversal, we

11

consider "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence." *Duarte*, 2007-NMCA-012, ¶ 15.

**{43}** As we have explained, defense counsel's failure to interview the State's experts was not due to a breach of duty on the part of the State. The trial court specifically stated that it "takes very seriously the [S]tate's obligation to provide timely discovery and cooperate in interviews." Defendant also has not established that the State breached a duty regarding the late-disclosed medical records. At the hearing on Defendant's motion, the State explained that the records were recent records, which had not previously been part of the State's file. The State passed the documents on to Defendant as soon as they were obtained. The trial court pointed out that Defendant had as much access to these records as did the State, and he could have easily obtained them. There is additionally very little indication, apart from Defendant's insistence, that these recent records were material to the charge. The records pertained to Child's condition at the time of trial and not at the time he was injured or before the injuries.

**{44}** With regard to the late-disclosed witnesses, we first observe that Defendant did not argue to the trial court that the State violated Rule 5-501(A)(5), which requires the State to disclose witnesses within ten days of arraignment. We further fail to see how Defendant was prejudiced by the untimely disclosure. To determine prejudice, "we look at whether the defense's case would have been improved by an earlier disclosure or how [the defense] would have prepared differently for trial." *Duarte*, 2007-NMCA-012, ¶ 15 (alteration in original) (internal quotation marks and citation omitted). The State's first expert was disclosed on February 23, 2005. Although this disclosure is outside the time set by Rule 5-501(A)(5), over eight months elapsed before trial commenced. The two additional experts were disclosed on August 10, 2005, more than two months before trial.

**{45}** Defendant made no claim below—and makes none on appeal—that he would have prepared differently for trial had he known of the expert witnesses earlier. In fact, the primary difficulty in securing witness interviews was not notice, but defense counsel's inaction and her disagreement about whether the State or Defendant was responsible for arranging the interviews. Given the length of time between Defendant's receipt of notice of the witnesses and the trial, as well as defense counsel's supposed misapprehension about his responsibility to arrange for interviews, we conclude that the trial court did not abuse its discretion by failing to provide a remedy for the late disclosure.

c.      **Expert Testimony**

**{46}** As an initial matter, Defendant does not argue that under *Daubert* or any other authority that the State's doctors were not qualified to testify, that the evidence of shaken baby syndrome does not assist the trier of fact, or that the shaken baby diagnosis is not sufficiently based on applicable factors under Rule 11-702 NMRA or Rule 11-104(A) NMRA. Instead, Defendant challenges the timing of the evidentiary hearing and the trial court's conduct of the hearing on the day of trial. These arguments focus on the deficiencies

of the trial court and not on the deficiency or the unreliability of the medical diagnosis at issue. Accordingly, we review Defendant's contentions as they are presented. We do not analyze whether the evidence of shaken baby syndrome is subject to having *Daubert* applied or otherwise meets the standards for scientific reliability. *See Torres*, 1999-NMSC-010, ¶ 43 ("[A]pplication of the *Daubert* factors is unwarranted in cases where expert testimony is based solely upon experience or training." (internal quotation marks and citation omitted)).

**{47}** Dr. Campbell was the State's final witness, and two other doctors had testified earlier in the trial. Defendant contends that at least one of these doctors, Dr. Coleman, touched on the issue of shaken baby syndrome—although that doctor did not refer to it by name—before the trial court had considered the scientific reliability of the diagnosis. Defendant thus argues that by delaying the *Daubert* hearing, unqualified and potentially unreliable evidence was admitted. We are unpersuaded. Irrespective of whether *Daubert* applies to the shaken baby diagnosis, we see no error in delaying the hearing.

**{48}** First, Defendant's argument that the trial court "improperly delayed" a hearing on the admissibility of the shaken baby testimony is unconvincing in light of the fact that the court was presented with the motion on the day of trial. Second, Defendant made no objection when the trial court proposed to consider the evidentiary reliability during trial or when Dr. Coleman gave her testimony. Third, Defendant offers no authority for the proposition that a *Daubert* hearing pursuant to Rule 11-104 or Rule 11-702 must take place at a particular time during or before the trial. *See State v. King*, 2007-NMCA-130, ¶ 17, 142 N.M. 699, 168 P.3d 1123 (refusing to consider arguments unsupported by authority or analysis), *cert. quashed*, 2007-NMCERT-011, 143 N.M. 157, 173 P.3d 764.

**{49}** Fourth, it appears from the record that although the trial court qualified Dr. Coleman as an expert witness, the State presented her primarily as a fact witness because she was the treating physician at the time that Child was brought to the University of New Mexico Hospital emergency room. She testified as to the extent of all of Child's injuries. Dr. Campbell later connected some of these injuries to shaken baby syndrome—after the trial court accepted the scientific foundation. Dr. Coleman, however, did not offer a shaken baby diagnosis and we see no error in the trial court's hearing her testimony regarding her observation of all of Child's injuries before considering the evidentiary reliability of the diagnosis.

**{50}** Our Supreme Court has characterized the trial court's role in the admission of expert evidence as that of a "gatekeeper." *State v. Downey*, 2008-NMSC-061, ¶ 25, 145 N.M. 232, 195 P.3d 1244. Defendant next argues that the trial court failed to fulfill its role as gatekeeper on two grounds. According to Defendant, the trial court was insufficiently critical of the State's proposed expert, and further, the trial court did not genuinely inquire into the validity of the shaken baby diagnosis. Defendant takes the position that more active participation by the trial court was required because Defendant was prevented by the trial court's rulings from obtaining an expert as either a witness or a consultant and from fully exploring the symptoms underlying a shaken baby syndrome on cross-examination of Dr. Campbell. We disagree, primarily because Defendant's characterizations of the trial court's actions are not supported by the record. As we have already concluded, the trial court did

13

not prevent Defendant from obtaining an expert—the absence of expert support was due entirely to defense counsel's lack of diligence. Additionally, Defendant provides no authority for the proposition that heightened participation by the trial court is required under certain circumstances. *See King*, 2007-NMCA-130, ¶ 17.

**{51}** Similarly, the record does not support Defendant's argument that the trial court prevented Defendant's counsel from effectively cross-examining the State's shaken baby expert; the record demonstrates that the trial court did not prevent Defendant's counsel from pursuing any line of questioning during voir dire. Defendant points to an exchange between his counsel and Dr. Campbell, in which Defendant asked, "[A]ren't there in fact many other causes for those kinds of conditions such as the retinal hemorrhages as opposed to just shaking?" Dr. Campbell proceeded to outline potential alternate causes for the symptoms that she had identified as indicators of shaken baby syndrome. Defendant followed up with another question: "And how, how about something such as vaccines, the impact of them?" The State objected and argued that the questions were beginning to stray afield. The trial court permitted Defendant to continue: "I'll let you, I'll let you go on a little bit[.]" After that, Defendant elicited a response to the question regarding the vaccines and continued the examination of the expert without interruption. Although Defendant's questions were interrupted by an objection, the trial court permitted Defendant to continue. We thus fail to see how the trial court's actions prevented Defendant from conducting an effective cross-examination of Dr. Campbell.

**{52}** Based on Defendant's articulated challenges to the trial court's admission of the shaken baby diagnosis, we hold that the trial court did not abuse its discretion by admitting the expert evidence.

### 3.      **Rulings and *Schoonmaker***

**{53}** Having reviewed the three rulings in light of *Schoonmaker*, we conclude that Defendant failed to establish that the rulings rendered his counsel ineffective. The presumption of prejudice is inapplicable to the facts before us, and we discern no error in the trial court's rulings.

### III.     CONCLUSION

**{54}** We remand this matter for an evidentiary hearing to determine whether Defendant's counsel was ineffective in failing to obtain or consult with an expert or in failing to interview the State's experts. We observe that although Defendant's complaints regarding the motion to mitigate and the trial court's rulings are insufficiently developed to support a direct appeal, he retains the right to pursue these claims via habeas review.

**{55}    IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

14

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**


_____

**TIMOTHY L. GARCIA, Judge**

Topic Index for _State v. Aragon,_ No. 27,615

| **AE** | **APPEAL AND ERROR** |
| AE-PJ | Prejudicial Error |
| AE-RM | Remand |
| | |
| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-ES | Enhancement of Sentence |
| CA-EX | Expert Witness |