This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38434**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RICKY PACHECO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant appeals his conviction for child abuse (recklessly caused) (great bodily harm), based on injuries sustained by a two-year-old boy (Child) in his care. Defendant asserted that Child was accidentally injured. On appeal, Defendant raises three issues: (1) whether the district court improperly denied Defendant's motion to continue; (2) whether Defendant received ineffective assistance of counsel; and (3) whether Defendant received an illegal sentence. We affirm.

**{2}**     This nonprecedential memorandum opinion is issued solely for the benefit of the parties. Because the parties are familiar with the facts and procedural history of the case, we limit our discussion to those matters necessary for resolution of the issues presented by this appeal.

## I.     Motion for Continuance

**{3}**     Defendant claims that the district court erred in denying his motion for a continuance because it forced him to go to trial without a defense expert. He maintains that he needed his own expert to counter the many experts relied on by the State. We review a district court's denial of a motion for a continuance under an abuse of discretion standard. *See State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135.

**{4}**     In *State v. Torres*, 1999-NMSC-010, 127 N.M. 20, 976 P.2d 20, our Supreme Court set forth several factors courts should consider in evaluating a motion for continuance,

> including the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*Id.* ¶ 10. When the district court's denial of the motion does not follow a logical application of these factors to the facts of the case, the district court has committed an abuse of discretion. *See State v. Gonzales*, 2017-NMCA-080, ¶ 32, 406 P.3d 534.

**{5}**     Here, Defendant filed a witness list on February 21, 2018, naming Dr. Steven Gabaeff as an expert witness "on the issue of 'abusive head trauma' or 'nonaccidental trauma' and other medical matters raised by the State." On February 28, 2018, Defendant filed a motion to compel Child's medical records from the time Child was released from the hospital to the present for use by his expert, asserting that these records were necessary for his expert to effectively render an opinion. This motion was granted. On June 15, 2018, Defendant filed an unopposed motion for a new trial date, which was also granted. In its order granting the motion, the district court found: "For the reasons stated in Defendant's motion and at the hearing, including that Defendant's expert is still reviewing thousands of pages of medical records and could not submit a report and be available to be interviewed before the trial dates, there is good cause to set a new date for trial." The trial was delayed for six months and rescheduled for January 28 through February 15, 2019.

**{6}**     At a pretrial hearing on January 8, 2019, with the new trial date looming, defense counsel moved for a continuance because he was still waiting on medical records. Defense counsel represented that his expert needed these records to complete his

report. The State responded to this request by reminding the district court that Defendant had already received a significant continuance so that his expert could generate a report and that it had provided the defense the Child's medical records for a year following his injury. Defense counsel stated that they wanted "ongoing records" and, when the district court asked what the records would disclose, the defense responded that they wanted to see what condition the Child was in currently. The district court responded that it was having difficulty understanding why Defendant needed medical records forever and noted that the defendant had not made a showing of exceptional circumstances to grant the continuance under LR2-308(J) NMRA. The district court denied the motion for a continuance but gave the defense until January 18, 2019, to provide the expert's report and until January 25, 2019, to make the expert available for a pretrial interview by the State.

{7}     The defense did not produce the report and did not produce their expert witness for a pretrial interview within the timelines set by the district court. As a result, the State filed a motion to exclude Dr. Gabaeff. At the hearing on the motion to exclude, defense counsel stated that he was "not sure what's happening with Dr. Gabaeff," and asked for one day to try to get ahold of him, although he informed the court that he had not spoken to Dr. Gabaeff in ten days despite attempts to contact him. The district court granted the motion to exclude, finding that "Defendant has no explanation for failing to provide [Dr. Gabaeff's] report other than indicating that Dr. Gabaeff had been unresponsive to his calls[,]" that the State "is prejudiced as they were unable to rebut any assertions that may be made by Dr. Gabaeff," and that "the [district] court considered less severe action, [but] given the upcoming trial date, the importance of the report and testimony of Dr. Gabaeff and the fact that the [district] court already extended deadlines under LR2-308, no lesser sanction is appropriate." The district court added that if defense counsel got the expert's report before the trial, he could "file a motion to reconsider" and that a hearing would be scheduled as soon as possible. The defense never filed such a motion. Defendant now claims that the district court erred when it denied his request for a continuance. We, therefore, consider the *Torres* factors listed above.

## A.     The Length of the Requested Delay

{8}     Defendant did not specify how long of a continuance was necessary for his expert to complete his report, which was the reason for the requested delay. Defendant argues that setting his trial for the next setting "would have given the defense expert an additional month or two in which to complete the report." While the amount of delay requested in this case was unclear, Defendant's suggestion that an additional month or two would be necessary weighs against Defendant's request. *State v. Salazar*, 2006-NMCA-066, ¶¶ 24, 26, 139 N.M. 603, 136 P.3d 1013 (concluding the denial of a continuance was proper where the defendant did not specify an amount of time and the delay was likely at least two months).

## B.     The Likelihood That a Delay Would Accomplish the Movant's Objectives

**{9}** Defendant contends that the delay would have accomplished his objectives. He argues that his expert was unresponsive for only "a couple of weeks" before the district court suppressed his testimony, but there is no indication that an additional delay would result in a completed report. Defendant had already received an additional six months for his expert to prepare his report. In addition, when the district court denied Defendant's second motion to continue on January 8, 2019, he was still given until January 18, 2019, to provide his expert's report and until January 25, 2019, for the State to interview his expert. The district court even told counsel that he could file a motion to reconsider if the expert completed the report. No motion was ever filed, suggesting that the report was not completed in that additional time period.

**{10}** Defendant has not argued why his expert was unable to complete his report during the initial six-month continuance granted for that very purpose or provided any argument as to how likely it was that Dr. Gabaeff would finish his report if additional time was given. Rather, Defendant represented that he needed additional time to make contact with his expert, who had been unresponsive for a couple of weeks. Because there is no indication that a delay of any length would have resulted in a completed expert report, we weigh this factor against the Defendant.

## C. The Existence of Previous Continuances in the Same Matter

**{11}** The district court granted one previous continuance in this case. The parties stipulated to the continuance, and defense counsel represented that the defense needed the delay for their expert to review recently disclosed medical records before completing his report. The district court granted the continuance specifically to give Defendant an additional six months for his expert to complete the report. *See State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534 (prior continuances totaling three months beyond the initial trial setting weighed against granting another continuance). This factor weighs against Defendant.

## D. The Degree of Inconvenience to the Parties and the Court

**{12}** This trial setting was the second trial setting, and the district court found that there was no showing of exceptional circumstances that would justify another delay under LR2-308(J). Defendant argues that the "only inconvenience articulated by the prosecution was that a delayed defense expert report would require an expedited *Daubert* hearing" and a continuance "of a reasonable length to complete the defense expert report could have alleviated the prosecution's concern." However, this was a complex case in which the State presented six expert witnesses, trial was set to begin in less than three weeks, and the trial date was already set outside the parameters of LR2-308. This Court has previously recognized that "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *State v. Brazeal*, 1990-NMCA-010, ¶ 16, 109 N.M. 752, 790 P.2d 1033 (internal quotation marks and citation

omitted)). In light of these considerations, this factor also weighs in favor of the district court's denial of a continuance.

## E.     The Legitimacy of the Motives in Requesting the Delay

**{13}**     Defendant's motives in requesting the delay appear to have been legitimate since his explanation for the delay was that he had an expert who was being uncooperative. Given that there is no evidence that Defendant's motives underpinning the request were improper, this factor is neutral.

## F.     The Fault of the Movant in Causing the Need for the Delay

**{14}**     Defendant attempts to assign blame for the delay to the prosecution based on the failure to timely disclose Child's medical records. However, the State had already stipulated to the previous continuance and provided a year's worth of medical records to the defense. Defendant has not argued why the disclosure of additional records was necessary for the completion of the expert's report. Defendant cites *State v. Johnson*, 2007-NMCA-107, ¶ 10, 142 N.M. 377, as authority for assigning fault to the State for the delay. However, in *Johnson*, the prosecutor told defense counsel that witness interviews would be conducted, but they never actually conducted interviews at all. *Id.* Here, in contrast, the State provided Defendant with medical records that were critical for his expert's review. This factor weighs against Defendant.

## G.     The Prejudice to the Movant in Denying the Motion

**{15}**     When the district court denied Defendant's motion for a second continuance, the court set deadlines for completing the expert report and the pretrial interview of the defense expert. Defendant argues that due to the denial of the continuance, his expert "did not have time to complete his report, and the district court entirely excluded his testimony." There is no evidence in the record that the reason Defendant's expert did not complete his report was due to the denial of the continuance. To the contrary, Defense counsel represented at the hearing on the motion to exclude that the expert had been unresponsive for the last couple of weeks, i.e., since the January 8 hearing. Defense counsel did not attempt to have this expert testify at this hearing. More importantly, Defendant has not made any showing that the report would have been beneficial to the defense. *See Salazar*, 2006-NMCA-066, ¶ 28 (citing *Brazeal*, 1990-NMCA-010, ¶ 26, for the proposition that "where continuance is sought to obtain defense witnesses, in order to show prejudice, there must be a showing that the witness was willing to testify and would have given substantially favorable evidence"). Defendant's argument that his counsel could not "effectively defend against Dr. Strickler's diagnosis of 'abusive head trauma' " is speculation because there is no indication of the nature of the testimony his expert would have provided on this issue. This factor also weighs against Defendant.

**{16}**     Considering all of the above, we conclude that Defendant has not established an abuse of discretion in denying the continuance. *See State v. Gallegos*, 2011-NMSC-

027, ¶¶ 67-70, 149 N.M. 704, 254 P.3d 655 (considering the failure of trial counsel to identify the time needed, to demonstrate that the delay would achieve the defense's goals, and to establish prejudice in concluding that the defendant did not establish an abuse of discretion); *State v. Aragon*, 2009-NMCA-102, ¶¶ 36, 38, 40-41, 147 N.M. 26, 216 P.3d 276 (considering the state's vigorous opposition to the continuance, the defense's failure to identify the time needed to prepare for trial or how the additional time would permit the defendant to prepare for trial, and considering that other continuances were granted to the defense, and that, even though the defense suffered prejudice in defense counsel's failure to obtain an expert and interview the state's expert, the defendant had time to accomplish these goals and did not establish an abuse of discretion on balance).

## II.      Ineffective Assistance of Counsel

**{17}**     Defendant claims that he received ineffective assistance of counsel because he did not have a defense expert. "To evaluate a claim of ineffective assistance of counsel, we apply the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)[.]" *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. "That test places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.*

**{18}**     Defendant claims that his counsel was ineffective without a defense expert because the central issue in this case, was the cause of Child's injuries and "whether [Defendant's] horseplay was criminally reckless beyond a reasonable doubt." Defendant claims that the failure to retain an expert witness fell below an objective standard of reasonableness. However, that is not the situation with which we are presented in this appeal. *See State v. Schoonmaker*, 2008-NMSC-010, ¶ 34, 143 N.M. 373, 176 P.3d 1105 (stating that the defense counsel's failure to obtain any expert witness or interview some of the prosecution's witnesses due to lack of funding was ineffective assistance), *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 34, 332 P.3d 850; *see also Aragon*, 2009-NMCA-102, ¶ 1 (holding that ineffective assistance was found when defense counsel did not interview the state's experts or hire his own expert).

**{19}**     In *Schoonmaker*, the defendant was charged with child abuse resulting in great bodily harm and could not afford an expert; private defense counsel sought to withdraw because the public defender department would not pay for an expert witness unless the public defender department represented the defendant. 2008-NMSC-010, ¶¶ 7-8. The district court denied the motion, in effect forcing defense counsel to choose between withdrawing and "risk being held in contempt, or to continue representation without necessary experts." *Id.* ¶ 36. Given this dilemma, our Supreme Court presumed that the defendant was prejudiced because "counsel's potential ineffectiveness is expressly brought to the attention of the district court and is occasioned by the rulings of the court itself." *Id*.

**{20}**     Here, in contrast to *Schoonmaker*, Defendant's counsel retained an expert and conducted interviews of the State's expert witnesses. Here, however, for the reasons

noted above, the defense's expert did not testify. In addition, the record does not contain a proffer or otherwise indicate that Defendant's expert would have provided exculpatory testimony. As such, like most ineffective assistance of counsel claims on direct appeal, we conclude that that the record is insufficient to determine this issue. Nevertheless, Defendant may pursue a habeas corpus proceeding so that he can develop an adequate record. *See State v. Hunter*, 2006-NMSC-043, ¶ 30, 140 N.M. 406, 143 P.3d 168 (observing that habeas corpus proceedings are preferred for ineffective assistance of counsel claims because the record "may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness" (internal quotation marks and citation omitted)).

## III.    Illegal Sentence

**{21}**    Defendant claims that the judicial determination that the child abuse conviction was a "serious violent offense" under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, § 33-2-34 (2015), amounted to an illegal sentence. Child abuse is listed in Section 33-2-34(L)(4)(o) of the EMDA, which lists the offenses that may be classified as a serious violent offense "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense." The district court's designation of a crime as a serious violent offense is within that court's discretion and will be affirmed if supported by substantial evidence. *See State v. Solano*, 2009-NMCA-098, ¶ 7, 146 N.M. 831, 215 P.3d 769 (stating that "a district court abuses its discretion when its decision is not supported by substantial evidence" (internal quotation marks and citation omitted)).

**{22}**    Here, Defendant is not arguing a lack of substantial evidence. Instead, he contends that the discretionary serious violent offense provision of the EMDA cannot constitutionally be applied in this case based on a judicial finding. He argues that this finding must be made by a jury because it enhances a defendant's sentence. This Court rejected this argument in *State v. Morales*, 2002-NMCA-016, ¶ 6, 131 N.M. 530, 39 P.3d 747, where we held that the EMDA does not add time to a defendant's sentence because the underlying sentence remains the same. Instead, "the court's finding . . . simply had an impact upon the amount of time by which defendant through his own good conduct could decrease his sentence." *Id.* ¶¶ 8, 11 (emphasis, internal quotation marks, and citation omitted); *see State v. Ayala*, 2006-NMCA-088, ¶ 3, 140 N.M. 126, 140 P.3d 547 (holding that a crime that is classified as a serious violent offense under the EMDA "does not constitute an enhancement of [a defendant's] sentence triggering the constitutional requirement of a jury trial").

**{23}**    Defendant asks us to revisit *Montoya* in light of *Alleyne v. United States*, 570 U.S. 99, 103 (2013), which held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt . . . any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." We decline to revisit *Montoya* because *Alleyne* did not involve good time credit but addressed findings that enhanced the basic sentence for the use of a firearm based on the manner of use, thereby becoming an essential element of the

crime and its attendant basic sentence. *Id.* at 103-04. Here, Defendant's sentence remained unchanged, at eighteen years, and was not increased by the judge. *See* NMSA 1978, § 31-18-15(A)(3) (2019) (stating that the basic sentence of imprisonment for a first-degree felony is eighteen years).

**CONCLUSION**

**{24}** For the reasons set forth above, we affirm.

**{25}   IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**